IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE PAPPAS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:20-cv-04205 ) |
| AUTO CLUB INSURANCE ASSOCIATION, | ) Judge: Manish S. Shah ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S ACTUAL CASH VALUE CLAIMS AND/OR MULTI-STATE CLASS ALLEGATIONS**

Defendant Auto Club Insurance Association ("ACIA") presents this Memorandum of Law in support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint")(Exh. A to Doc.1-1)[1] pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 12(b)(1), or in the alternative, to dismiss the allegations relating to the payment of actual cash value ("ACV") and/or to dismiss the multi-state class allegations in Plaintiff's Complaint pursuant to FRCP 23. In support of its Motion, ACIA offers the following.

## I.  INTRODUCTION

ACIA issued an automobile insurance policy to Plaintiff. Amended Complaint, ¶. 2. Under the Limit of Liability provision of Part V – Car Damage Coverages of the Policy, ACIA's limit of liability to Plaintiff "shall not exceed the lesser of: (1) ACV at the time of loss of the damaged property; or (2) the amount necessary to repair or replace the damaged property; or (3) any applicable Limit of Liability shown on the Declaration Certificate. (Amended Complaint ¶. 39).

---

[1] All references herein to Court Doc. numbers are to Court documents in Case # 1:20-cv-00983, except the Amended Complaint, which is Exhibit A to Doc. 1-1 in Case # 1:20-cv-04205.

1

The policy provides that ACV *"is determined by market value, age and condition at the time the loss occurred. ..."* (Amended Complaint ¶. 40).

On August 6, 2019, Plaintiff's vehicle was involved in an accident, which rendered the vehicle a total loss. Amended Complaint ¶ 55. ACIA paid Plaintiff the ACV of his vehicle, along with 7.25% sales tax on that amount and a title fee of $120.00. Amended Complaint ¶ 59.

Plaintiff filed a purported Class Action Complaint ("Original Complaint") (Doc. 1-1) alleging Breach of Contract (Original Complaint, Count I, ¶¶ 58 – 70), and Unjust Enrichment (In the Alternative)(Count II, Original Complaint ¶¶ 71 – 77). Plaintiff's Breach of Contract claim was based on Plaintiff's allegation that when paying a first party automobile total loss claims, ACIA owed the Plaintiff and the purported class members the ACV of their vehicles or the amount necessary to repair or replace the damaged vehicle with another of like kind and quality, along with mandatory title, registration and license plate fees and taxes.. (Original Complaint ¶¶ 43, 65, 67). Plaintiff claimed that ACIA failed to pay these fees. (Original Complaint ¶¶68, 69). Plaintiff further alleged that ACIA was unjustly enriched by the alleged failure to pay the full amount of fees involved with the purchase of a replacement vehicle. (Original Complaint ¶ 74).

On June 18, 2020, this Court entered an Order dismissing Plaintiff's Original Complaint. Doc #32. Plaintiff in turn filed his First Amended Class Action Complaint in the Illinois state court where his Original Complaint had been filed. ACIA removed the Amended Complaint back to Federal Court. The case has since been assigned to this Court and Defendant now files its Motion to Dismiss Plaintiff's Amended Complaint and this Memorandum in support thereof.

## II. PLAINTIFF IS ATTEMPTING TO RE-LITIGATE THE VERY CLAIMS THAT THIS COURT HAS ALREADY DISMISSED IN ITS JUNE 18, 2020 ORDER

In reviewing Plaintiff's Amended Complaint, it is apparent that Plaintiff, dissatisfied with this Court's June 18, 2020, Order dismissing Plaintiff's claims, is now attempting to take a second bite of the same apple, asserting the same claims that have already been dismissed once by this Court. For this reason, Defendant requests that the Court once again dismiss those claims.

In the Court's June 18, 2020, Order (Doc. #32) dismissing Plaintiff's claims, the Court held in relevant part that:

- ACIA's liability to Plaintiff under its policy was limited to the lesser of ACV or the amount necessary to replace the vehicle. *Id.*, p.3.

- ACV, as defined in the ACIA policy, is determined by market value, age and condition, and <u>does not include title and other fees associated with purchasing a replacement vehicle</u>. *Id*. p.4-5 (emphasis added).

- Because ACIA's policy specifically limits ACIA's liability to the lesser of ACV or the amount necessary to replace a vehicle, and ACIA paid Plaintiff the ACV of the vehicle, <u>ACIA had fulfilled its contractual obligation to Plaintiff</u>. *Id* (emphasis added);

- Under the Illinois Administrative Code ("Code"), in the event of a total loss and if the policy provides for settling of claims on an ACV or replacement cost basis, the insurer is required to select between providing a replacement vehicle, or paying a cash settlement (ACV). *Id*. p. 6 - 7.

- If the insurer provides a cash settlement and the insured purchases a replacement vehicle in compliance with Code requirements, the insurer has to reimburse the insured for applicable sales tax and transfer and title fees incurred. *Id*. p.6.

- ACIA "complied with the Code by adding sales tax and a title fee to cash value to arrive at the settlement it paid Pappas." *Id*. p.7;

- Neither the Code not the ACIA policy require ACIA to pay registration and license plate fees that were demanded in Pappas' initial Class Action Complaint. *Id*. p.7;

- Pappas' Complaint did not state a claim for breach of his contract, and was therefore dismissed without prejudice. *Id*.

- Plaintiff's claim for unjust enrichment rested on the same conduct alleged in his breach of contract claim. As such, the unjust enrichment claim stood or fell with the breach of contract claim. For the reasons that there was no breach of contract, there is also no unjust enrichment. *Id*. p.8;

Plaintiff's Amended Complaint has few substantive differences from the Original Complaint that was previously dismissed by this Court. Interestingly, although this Court has already ruled in its June 18, 2020 order that ACV **does not include title and other fees associated with purchasing a replacement vehicle**, throughout the Amended Complaint Plaintiff attempts to categorize these same fees as "mandatory costs" or "mandatory fees" allegedly part of ACV:

- "State title and transfer fees are part of the ACV because they are mandatory costs involved with the purchase of any replacement vehicle in Illinois and in many other states." Amended Complaint ¶ 5.

- State title and transfer fees are part of the amount necessary to replace the vehicle "because they are mandatory costs involved with the purchase of any vehicle in Illinois and many other states, and therefore part of the replacement cost of any vehicle." *Id*. @ ¶. 6.

- ACIA must pay "mandatory state fees for a replacement vehicle" either as part of the cost to replace the vehicle as promised by ACIA, or as a component of ACV, or by virtue of the Code. *Id*. @ ¶. 13.

4

- While ACIA paid some fee amount, it failed to pay the full amount of state title and transfer fees involved with the purchase of a replacement vehicle, thus breaching its contract. *Id*. ¶. 15.

- The lawsuit is brought on behalf of Plaintiff and on behalf of a class, "the members of which were not paid the full costs of mandatory state fees as part of their total loss claims." *Id*. ¶¶ 19 and 64.

- By failing to pay the full amount of the mandatory state vehicle replacement fees, ACIA breached its contract with Plaintiff and the purported class members, and was unjustly enriched. *Id*. ¶¶ 53, 63, 78 and 79;

- Title fees and transfer fees are a mandatory part of a vehicle's purchase price, and "thus are items which ACIA was contractually obligated to pay. *Id*. ¶. 60;

- Plaintiff and purported class members were owed the ACV or amount necessary to replace their damaged vehicle, "along with mandatory state fees, so they could replace their totaled vehicle. Id. ¶. 77.

- ACIA was unjustly enriched by failing to pay the full amount of mandatory state fees involved with the purchase of a replacement vehicle. Id. ¶. 84.

In numerous instances throughout the Amended Complaint, Plaintiff alleges that ACIA is liable for failing to pay "mandatory" taxes and fees that this Court has previously held are not "mandatory" and in fact are not owed by ACIA at all. He even erroneously defines the purported class as centered around these alleged "mandatory" fees. The proposed class definition cannot be sustained as it is contrary to this Court's prior holding. Although the Amended Complaint generally refers to "transfer fees" as part of Plaintiff's alleged claims, no evidence has been

5

presented to the Court that Plaintiff incurred such fees. Plaintiff is clearly attempting to re-litigate the claims that this Court has already dismissed once.

By paying Plaintiff ACV for his total loss, ACIA has fulfilled its contractual obligation to Plaintiff. Therefore, his claim for breach of contract should again be dismissed. Furthermore, because Plaintiff's claim for unjust enrichment rests on the same conduct alleged in the breach of contract claim, this claim should likewise be dismissed again.

Finally, Plaintiff's multi-state class allegations should also be dismissed because Plaintiff cannot bring claims on behalf of a multi-state class that is defined as those who were not paid fees that this Court has already ruled are not owed by ACIA, and where the Complaint lacks sufficient factual allegations to support any multi-state class. Plaintiff incorrectly asserts that the purported claims present common questions of law and fact which are appropriate for class wide disposition. Additionally, Plaintiff lacks standing to bring an action under the laws of any state other than Illinois. For these reasons, Plaintiff's allegations for any claims beyond the state of Illinois should be dismissed.

    A.  <u>**AS PREVIOUSLY DETERMINED BY THIS COURT, PLAINTIFF'S CLAIMS MUST BE DISMISSED AS ACV PAYMENTS UNDER ACIA'S POLICY AND ILLINOIS LAW DO NOT INCLUDE PAYMENT OF FEES**</u>

In previously dismissing Plaintiff's claim for breach of contract, this Court correctly held that under ACIA's policy, ACV is determined based on "market value, age and condition". Doc. 32, p.4. The Court found Plaintiff's argument that ACV includes all the fees that would have to be paid to the state to make the vehicle legal to drive, as being "unreasonable" and "not consistent with the plain, ordinary understanding of the terms "market value" or "age and condition". *Id.* Thus, the Court held ACV as defined in the policy does not include those fees. *Id.*

The determination that ACV does not include fees and taxes associated with the replacement of a vehicle, is consistent with rulings by Judge Virginia M. Kendall in *Coleman v. Garrison P&C Ins. Co.*, 2020 U.S. Dist. LEXIS 47120 (N.D. Ill. 3/18/2020), @7 ("the policy does not include sales tax and title transfer fees" in ACV); and *Coleman v. Garrison P&C Ins. Co.,* 2019 U.S. Dist. LEXIS 127940 (N.D. Ill. 7/31/19) @8 (policy definition of ACV as the amount it would cost "to buy a comparable vehicle" is "limited to the purchase price of the vehicle itself and does not include attendant 'replacement costs' like sales tax, title fees, registration fees, or the like.").

Despite the clear language of the ACIA policy that ACV is determined by market value, age and condition, and despite this Court's June 18, 2020 ruling that ACV does not include fees associated with the purchase of a replacement vehicle, Plaintiff continues to argue that "State title and transfer fees are part of the ACV because they are mandatory costs involved with the purchase of any replacement vehicle …" and that ACIA still owes "mandatory fees" to Plaintiff (Amended Complaint ¶¶. 5, 13, 51, 77, and 79).

As this Court did with the breach of contract claim in Plaintiff's Original Complaint, the Court should dismiss Plaintiff's breach of contract claims in his Amended Complaint which are based on any alleged underpayment of ACV.

**B. <u>PLAINTIFF'S CLAIMS MUST BE DISMISSED AS ACV OR "AMOUNT NECESSARY TO … REPLACE" IS THE LIMIT OF ACIA'S LIABILITY FOR TOTAL LOSS – NOT THE AMOUNT IT PROMISED TO PAY IN THE EVENT OF TOTAL LOSS</u>**

As in his Original Complaint, Plaintiff alleges in his Amended Complaint that ACIA has breached its insurance contract by failing to pay mandatory state fees for the replacement of a vehicle. (See Amended Complaint ¶¶ 13, 15, 51, 53, 60, 63, 66(b), 77, 78, 79 and 84). However, this Court has already determined that ACIA's obligation under its policy with

7

Plaintiff is to pay *the lesser of* ACV or the amount necessary to replace the damaged vehicle. Since Plaintiff concedes that ACIA paid him the ACV of his vehicle, and ACV does not include the mandatory state fees, this Court determined that ACIA has fulfilled its contractual obligation to Plaintiff. Thus, there is no breach of contract by ACIA.

In holding that ACIA's contractual liability is limited to the lesser of ACV or the amount necessary to replace the damaged vehicle, this Court cited to *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 16439 (N.D. Ill. Jan. 30, 2020), Mtn. To Alter Jdgmt. denied 2020 U.S. Dist. LEXIS 47120 (N.D. Ill. Mar. 18, 2020), a case with similar facts and allegations to the case at bar. In *Coleman*, the Plaintiff argued that the Defendant's failure to pay sales tax as part of a total loss settlement constituted a breach of the insurance contract. 2020 U.S. Dist. LEXIS 16439 @ 2. Judge Kendall held that the policy "makes clear" that ACV "is the limit of (USAA's) lability for total loss – not the amount it promises to pay in the event of total loss." *Id* at 9. Thus, Judge Kendall granted Defendant's motion to dismiss with prejudice both the individual and putative class claims in the amended complaint, stating "Because there is no language in the policy or the related letters that obligates Defendants to pay Plaintiff the 'actual cash value' of her vehicle in the event of a total loss, Plaintiff fails to state breach of contract claims against Defendants." *Id*, at 10. ACIA asks the Court to follow Judge Kendall's holding and to dismiss Plaintiff's claims in the Amended Complaint in their entirety.

### C. **PLAINTIFF'S MULTI-STATE CLASS CLAIMS SHOULD BE DISMISSED BECAUSE THE PLAINTIFF'S AMENDED COMPLAINT DOES NOT MEET THE REQUIREMENTS FOR CLASS CERTIFICATION.**

To maintain a class action, a plaintiff "must affirmatively demonstrate [their] compliance with Rule 23." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33, 133 S.Ct. 1426 (2013). Rule 23(d)(1)(D) authorizes the Court to strike class allegations where it is plain

from the pleadings that class certification is inappropriate. *See, e.g., Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming District Court's granting of motion to strike class allegations); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.,* 2012 U.S. Dist. LEXIS 108696 at 8 (M.D. Fla. 2012) (striking class allegations where "Given the nature of the claims and individual factual inquiries required, it is apparent the individualized issues are predominant and this suit cannot proceed as a class action").

Although ambiguous on this issue, it appears that in the Amended Complaint Plaintiff seeks to certify a multi-state class of ACIA's insureds across either six or fifty different states (See Amended Complaint ¶¶5, 13, 25, 30, 32, 44, 45, 47, 48, 64, 66(c) and 74). Plaintiff's proposed class involves the application of the laws from numerous states, as well as interpretation of insurance policy language in light of each of those state's laws, statutes and regulations, precluding any finding of commonality or predominance as required by Rule 23. Additionally, Plaintiff's Complaint does not assert sufficient facts concerning ACIA's alleged conduct outside of Illinois to support the requirements of Rule 23.

    **1. DIFFERENCES IN STATE LAW AND THE REQUIREMENT OF INDIVIDUALIZED CLASS MEMBER PROOF PRECLUDE CERTIFICATION OF PLAINTIFF'S PROPOSED MULTI-STATE CLASS.**

Plaintiff attempts to characterize his proposed multi-state class action as a matter of basic contract interpretation that will be uniform for all class members in the various states. See Amended Complaint ¶ 66(c). Contrary to Plaintiff's assertions, however, the contracts (ACIA's insurance policies) that this action is based on must be interpreted in light of, the laws, statutes and regulations of the various states in which those contracts are issued. This requires individualized inquiries into, and the application of, various states' laws governing ACIA's obligations with respect to the settlement of individual total loss claims. Further, the proposed

9

multi-state class would necessitate presentation of individualized class-member proof to support the alleged claims. These factors preclude any finding of commonalty and predominance in this action as required by Rule 23, and render Plaintiffs class definition inherently overbroad and inappropriate. *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices, 715* F. Supp. 2d 1265, 1274 (S.D. Fla. 2010) (discussing requirements under Rule 23(a) and Rule 23(b)(3) and stating that to maintain a multi-state class action, a plaintiff must demonstrate "common questions of law or fact" that "predominate over any questions affecting only individual members").

### A. Differences in state insurance laws prevent certification of Plaintiffs proposed multi-state class claims.

If Plaintiff's multi-state class allegations are not dismissed, adjudication of this case would require the Court's analysis and application of the varying insurance laws of numerous states where proposed class members reside. The differences in each state's insurance laws, statutes and regulations destroy any possible finding of commonality and predominance with respect to the proposed multi-state class. *See, Klay v. Humana, Inc.,* 382 F.3d 1241, 1261 (11th Cir. 2004) ("Variations in state law may swamp any common issues and defeat predominance."); *see also, In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir. 2002) (reversing certification of multi-state class and noting "[n]o class action is proper unless all litigants are governed by the same legal rules").

Each state has its own unique body of insurance law codified in common law, statutes, regulations and administrative guidance that governs an insurer's obligations with respect to the settlement of insurance claims. *See, Peoples v. Am. Fid. Life Ins. Co.,* 176 F.R.D. 637, 642 (N.D. Fla. 1998) ("[t]here is no federal insurance code; each State has its own insurance code, as well as its own Department of Insurance which in turn has its own administrative regulations").

10

Courts generally find the variations in insurance laws across states make actions that require application of those laws ill-suited for class treatments. *See Id.* (denying certification of multi-state class against insurer finding the determination of plaintiffs' multi-state claims would require analysis of "the law of each jurisdiction where the product was sold" to determine "whether the actions complained of were indeed unlawful…a question of tremendous complexity and difficulty"); *see also, Hammett v. American Bankers Insurance Co.,* 203 F.R.D. 690, 701 (S.D. Fla. 2001)(denying class certification and noting "there is little uniformity with respect to state [insurance] laws governing whether Defendants are in breach").

In order to determine whether ACIA breached its contract and was unjustly enriched, each applicable state's statutes and common law would need to be individually analyzed across every claim. States take varied approaches regarding whether insurers are obligated to pay state fees as part of total loss settlements. For example, certain states statutes appear to require insurers to include sales taxes in certain circumstances when determining ACV on an auto total loss, but not to include title transfer fees: See*, N.Y. Comp. Codes R. & Regs. Tit. 11* § 216.6(b)(2)(1982), and *NY OGC Opinion* No. 08-10-13 ("an insurance company is not required under New York Insurance Law or regulations promulgated thereunder to include title transfer costs associated with the purchase of a replacement vehicle in determining the actual cash value of a motor vehicle that suffered a total loss"); and, *N.J. Admin. Code* § 11:3-10.4 (requires ACV payment plus applicable sales tax); while other states requires payment of taxes and fees, see, *Ala. Admin. Code r.* 482-1-125-.08(b) (cash settlements are based on "actual cost … to purchase comparable vehicle, including applicable taxes and license fees and other fees incident to the transfer of ownership). On the other hand, Illinois only requires the payment of sales taxes and transfer and title fees after the insured actually replaces the vehicle. See*, Ill. Admin.*

*Code* tit. 50 § 919.80(c)(3)(A)(i). Even in states that require the payment of state fees, the type and amount of fees insurers are obligated to pay will vary based on differing state laws.

The differences in state statutes and regulations preclude certification of Plaintiffs proposed multi-state class. See*, In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1085 (6th Cir. 1996) (denying certification and finding "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").

### B. The necessity of individualized class member proof precludes certification of Plaintiff's proposed multi-state class.

The individualized proof necessary to establish breach of contract pursuant to the varying state laws where the putative class members reside also renders it impossible for common questions of law and fact to predominate in this case. Class members in states where fees and/or taxes are only paid if the insured purchases a replacement vehicle within a certain period of time, will have to submit proof that they in fact complied with their respective state law requirements. In states where potential state fees are calculated based on the age, weight and/or price of the insured's vehicle, each class member will have to submit individualized documentation regarding the characteristics and value of their vehicles, and the calculations would then have to be made class member-by-class member based on each such state's guidelines. Absent this extremely individualized proof, class members cannot establish the requirements of their causes of action - that ACIA had a duty to pay state fees to each class member in each state and that ACIA breached that duty. These individualized inquires and the proof necessary to establish Plaintiff and the proposed multi-state class member's claims will result in mini-trials not only with respect to liability to each class member, but also with respect to the amount of potential damages for each putative class member.

There is simply no set of proof common to the entire multi-state class that could be presented to establish the elements of Plaintiff's causes of action. This lack of common proof and the requirement of intense individualized inquiries that would predominate this action make Plaintiff's proposed multi-state class claims inappropriate. See, *Chilton Water Auth. v. Shell Oil Co.,* No. Civ. A. 98-T-1452-N, 1999 WL 1628000, at 6-8 (M.D. Ala. May 21, 1999) (granting motion to strike class allegations because multi-state class of fraud, negligence, and punitive damages claims declared unmanageable due to differences in state law). Furthermore, Plaintiff's proposed multi-state class includes individuals who were not harmed by ACIA such as policy holders in states like New York. See, *OGC OP.* No. 08-10-13, quoted infra at page 11, as finding that under New York law, insurers are not required to include title transfer costs when determining ACV on auto total losses. Class certification is properly denied where the purported class "impermissibly includes members who have no cause of action as a matter of law"). *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012). Plaintiff's multi-state class allegations should, therefore, be dismissed.

### 2. THE AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT THE PROPOSED MULTI-STATE CLASS.

Plaintiff's Amended Complaint does not allege any specific facts concerning ACIA's alleged conduct across multiple states, or the proposed multi-state class members' actual entitlement to state fees sufficient to establish the requirements of Rule 23. *See, Bauer v. Dean Morris, L.L.P.,* Civil Action No. 08-5013, 08-5014, 2011 WL 3924963, at *2 (E.D. La. Sept. 7, 2011) ("[c]lass allegations may be Dismissed where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate"); *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009)("(A) complaint stating only "bare legal

conclusions," even under notice pleading standards, is not enough to survive a Rule 12(b)(6) motion... The complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level"); and, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice").The only specific factual allegations presented in Plaintiff's Amended Complaint, concern ACIA's alleged conduct in Illinois and pertain exclusively to the proposed Illinois-based class. For example, Plaintiff cites to specific insurance policy forms issued in Illinois (*See* Amended Complaint ¶ 31), and then issues a blanket allegation that on information and belief the form "is a standard policy form that has been used ACIA [sic] for its Automobile Insurance Policies across the states in which it provides coverage." Amended Complaint ¶32. This statement is nothing more than speculation and conjecture in an attempt to create an improper multi-state class. Further, while Plaintiff does include a broad statement that "at least twenty-eight states, including Illinois, specifically require, through applicable statute or regulation, that insurers pay all monetary title and transfer fees in connection with a total loss" the footnote to this statement indicates that four of the six states in which ACIA writes auto insurance do not maintain such requirements. *See* Amended Complaint ¶¶, 25, 47, n.4. Plaintiff fails to identify any authority for the proposition that title and transfer fees are in fact owed as part of the replacement of vehicles in four of the six states in which ACIA writes insurance policies and whose insureds would be part of the proposed class. In a case with very similar allegations to this case, the United States District Court for the Middle District of Florida denied certification of a proposed eight-state class when Plaintiff failed to provide citations or authority "showing that each state charged mandatory tag and title transfer fees – a prerequisite to a claim that

Defendants owed putative class members such fees" *See Jones v. Government Employees Ins. Co.*, 2019 WL 1490703 at 8. (M.D. Fla. 2019). Plaintiff's Amended Complaint fails to include anything but conclusory allegations concerning ACIA's conduct outside of Illinois. Plaintiff fails to identify any other insured who had a claim outside of Illinois or to whom ACIA failed to pay applicable fees. Plaintiff's Amended Complaint, therefore, does not adequately allege multi-state conduct by ACIA or the relevant law applicable to the proposed multi-state class, and Plaintiff's claims on behalf of the multi-state class should be dismissed.

### D. PLAINTIFF LACKS STANDING TO REPRESENT THE PROPOSED MULTI-STATE CLASS.

Plaintiff's attempt to allege a multi-state class must also fail as Plaintiff lacks standing to present the claims of any class member outside the State of Illinois. Plaintiff, an Illinois resident, does not have standing to represent any non-Illinois class members whose claims are based on non-Illinois law. *See, Schultz v. Am. Family Mut. Ins. Co.*, 2005 U.S. Dist. LEXIS 38848, 2005 WL 5909003, (N.D. Ill 2005) (dismissing any class claims based on violation of wage laws of any states other than Illinois where the only named Plaintiff lacked standing to sue for violations of other states' statutes). *See also Clark v. Aaron's, Inc.,* 914 F. Supp. 2d 1301, 1311 (N.D. Ga. 2012) (dismissing claims on behalf of proposed subclasses due to named Plaintiff's lack of standing). For these reasons, Plaintiff lacks standing to bring the proposed multi-state class claims and these claims should therefore be dismissed.

### CONCLUSION

For the foregoing reasons, ACIA respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice, or in the alternative, dismiss with prejudice Plaintiff's allegations regarding the payment of actual cash value and Plaintiff's multi-state allegations.

Respectfully submitted this 23rd day of July, 2020.

/s Nick Papastratakos
Nick Papastratakos (6194210)
Hilbert & Power, Ltd.
77 West Washington Street
Suite 1217
Chicago, Illinois 60602

Attorneys for Auto Club Insurance Association

16