**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GEORGE PAPPAS, individually and )
On behalf of all others similarly situated, )
                                )
          Plaintiff, )
                                )
vs.                               )       Case No. 1:20-cv-4205
                                )       Hon. Manish S. Shah
AUTO CLUB INSURANCE ASSOCIATION, )
                                )
          Defendant. )

## PLAINITFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND

Defendant Auto Club Insurance Association ("ACIA") filed a Notice of Removal on July 16, 2020, removing Plaintiff George Pappas' ("Plaintiff") current pleading, his First Amended Complaint, on the "basis" that this Court previously denied remand in Case No. 20-cv-983. There, the Court held, based on Plaintiff's operative pleading at that time, that a $5 million controversy was "not impossible" and thus jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) was appropriate for that case. *See* Second Notice of Removal (Dkt. 1), ¶¶ 8, 14-18. Beyond that assertion, the Second Notice of Removal contains no statement of grounds for removal, and it is accompanied by no evidentiary materials in support of jurisdiction.

ACIA seeks to remove the First Amended Complaint despite the inconvenient facts that: (1) this Court expressly granted leave to Pappas to file an "amended complaint" in state court; (2) this Court has stated that if the amended complaint clarified Plaintiff's claim to exclude unpaid sales taxes and injunctive relief from the case, "there would likely be no federal jurisdiction over the dispute"; (3) Plaintiff's First Amended Complaint did precisely that, expressly excluding any claim for unpaid sales taxes and injunctive relief; (4) the removed First Amended Complaint does not, on its face, allege damages in excess of the $5,000,000, the jurisdictional minimum amount

in controversy required by CAFA; (5) jurisdiction must be evaluated based on the operative

pleading at the time of removal, here the First Amended Complaint; and (6) ACIA has not even

attempted, in the Second Notice of Removal, to establish through competent evidence any specific

facts demonstrating "to a reasonable probability" that CAFA jurisdiction exists based on the

operative First Amended Complaint. As such, the removal was improper.

Even to the extent that ACIA could rely upon the "evidence" in Case No. 1:20-cv-983,

specifically the Declaration of Jessica Legue ("Legue Declaration"), ACIA cannot support its

argument that jurisdiction exists in this case based on the First Amended Complaint. In light of the

disclaimer of sales tax recovery and injunctive relief, and taking into account the scope of the claim

actually alleged in the First Amended Complaint, the data contained in the Legue Declaration at

best establishes that the maximum amount of state fees at issue is $3,384,735.00. Thus, even

assuming the accuracy of the data previously proffered by ACIA, this case simply does not meet

the $5 million amount in controversy threshold for CAFA jurisdiction.

As such, ACIA has failed to provide the Court with the necessary facts to meet its burden

to establish the existence of jurisdiction (and, its earlier submissions conclusively prove the

contrary). Accordingly, the removal was improper, and this case must be remanded to state court.

## RELEVANT FACTS

### A.      Plaintiff's Original Complaint in the State Court Action

On January 7, 2020, Plaintiff George Pappas ("Pappas" or "Plaintiff"") filed a Class Action

Complaint in the Circuit Court of Cook County, Illinois, captioned *George Pappas, individually*

*and on behalf of all others similarly situated v. Auto Club Insurance Association*, case number

2020-CH-00180 (the "Original Complaint" in the "State Court Action") (*See* Doc. 1-1).[1] In sum, Plaintiff alleged he was underpaid for mandatory state regulatory fees (alleged therein as title, registration and license plates fees) as part of his total loss claim. Plaintiff did not allege he was underpaid for sales taxes on the transaction to replace his totaled vehicle, although the Original Complaint referenced sales taxes as an element of required compensation under the pertinent insurance policy and applicable state regulations for total loss claims. The Original Complaint alleged two alternative counts for relief, Breach of Contract and Unjust Enrichment. Plaintiff sought to recover damages, or obtain restitution, for the amounts of the underpayments of mandatory state regulatory fees, along with injunctive relief, on behalf of the alleged class.

**B.    ACIA's First Notice Of Removal**

On February 11, 2020, ACIA filed its First Notice of Removal, removing the Original Complaint to this Court pursuant to the Class Action Fairness Act ("CAFA"), where it was assigned case number 20-cv-983 (Doc. 1). The First Notice of Removal asserted that this Court had jurisdiction over the action based on CAFA and, specifically, that the amount in controversy based on the allegations of the Original Complaint exceeded $5 million in the aggregate for the entire class, exclusive of interest and costs. (*Id.* at ¶ 8.) ACIA submitted the Legue Declaration as evidentiary support. (Doc. 1-2.) ACIA based its contention that the CAFA amount in controversy was met on its position that the Original Complaint sought to recover (or at least such recovery was not impossible) for underpayment of sales taxes, along with title, registration, and license plate fees. (*See* Doc. 1, ¶ 22.) ACIA argued that the amount of sales taxes "potentially" in controversy for the 13,607 total loss claims it had identified totaled $7,372,418.50. (*See* Doc. 1, ¶ 22; *see also*

---

[1]    In order to distinguish between the two case dockets, references to documents contained in the docket for case number 20-cv-983 will be cited as "Doc. ___" and references to documents contained in the docket for case number 20-cv-4205 will be cited as "Dkt. ___".

Doc. 1-2, ¶¶ 8-10.) ACIA further argued that the amount of fees "potentially" in controversy on those claims ranged from $1,766,535.00 to $3,384,735.00. (*See* Doc. 1, ¶ 22; *see also* Doc. 1-2, ¶ 11.) ACIA thus contended, on the basis of the Legue Declaration, that the compensatory damages placed in controversy by Plaintiff's Original Complaint was between $9,138,953.50 and $10,757,153.50." (*See* Doc. 1, ¶ 22.)

**C.     Plaintiff's Motion to Remand and related Order**

On February 18, 2020, Plaintiff filed his Motion To Remand and Memorandum in support, in which he argued, *inter alia*, that ACIA had not met its burden to prove "to a reasonable probability" that the required amount in controversy was met in order to establish CAFA jurisdiction. (Doc. 11, 12.) By Order dated March 27, 2020, the Court denied the Motion To Remand. In its Order, the Court applied an "impossibility" standard, stating a removing defendant's estimate of the stakes of the litigation "controls unless a recovery that large is legally impossible," and citing *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011). (Doc. 25, at 1.) Based on that standard, and construing the potential damages sought on behalf of the class to potentially include all sales taxes paid by any insured person who suffered a total loss, and also the value of prospective injunctive relief, the Court concluded:

> The controversy here is likely worth less than $5 million, because unpaid sales tax is not alleged to be part of the breach and punitive damages are not available on the current complaint. But the test asks about impossibility, not likelihood. There is a possibility that some sales tax went unpaid, that the requested injunction would impose significant cost on the company, and that punitive damages could become available. With compensatory damages for unpaid fees totaling an estimated $3.4 million, a $5 million controversy is not impossible. (Doc. 25, at 4.)

**D.     Order Dismissing The Original Complaint *Without Prejudice***

The Court's Order in Case No. 20-cv-983, dated June 18, 2020, dismissed Plaintiff's Original Complaint based on defects in that pleading. (Doc. 32.) In the Order, moreover, the Court

made clear the dismissal of Plaintiff's Complaint was *without* prejudice, expressly granted Plaintiff

leave to file an "amended complaint," and to do so either in this Court or in state court. (Doc. 32;

*see also* Doc. 36.) ACIA did not seek to have the Court reconsider any aspect of its Dismissal

Order, particularly the granting of leave to Plaintiff to file an "amended complaint" in state court.

Nor did ACIA appeal from that Order.

**E.      Plaintiff's First Amended Complaint**

Plaintiff did precisely what this Court granted him leave to do. On July 1, 2020, Plaintiff

filed an "amended complaint," as that term is understood under the Federal Rule of Civil Procedure

and the Illinois Code of Civil Procedure, in state court, in the State Court Action. (Dkt. 1-1; *see*

*also* Doc. 35-1.) An Amended Complaint can only be filed in an existing action, so the only options

available to Plaintiff based on the grant of leave were to file an amended pleading in case number

20-cv-983 or to file it in the original State Court Action.[2]

In the First Amended Complaint, Plaintiff sought to address the issues and cure the defects

identified by the Court in its earlier Orders on the Motion to remand and the Motion to dismiss in

case number 20-cv-983. The First Amended Complaint (Dkt. 1-1) clarifies that Plaintiff seeks to

recover based on underpayment of only certain mandatory state regulatory costs (title and transfer

fees) as part of his total loss claim. He does not allege that he was underpaid for sales taxes. He

does not seek to recover based on underpayment of sales taxes. Plaintiff seeks to recover damages,

or alternatively obtain restitution, only for the amounts of the underpayments of mandatory state

title and transfer fees on behalf of the alleged class. Plaintiff does not seek injunctive relief.

The First Amended Complaint also clarifies that even if Plaintiff's claims are limited solely

---

[2]      An "amended complaint" is a subsequent pleading filed in the same action. *See* Fed.R.Civ.P. 15; 735 ILCS §§ 2-616; 2-615(d). The filing of an amended complaint (a subsequent pleading) is not the same as a "complaint" (the first pleading that commences an action).

to the most confined construction of "transfer and title fees," he still was underpaid by at least $30.00. An alternative construction of "transfer and title fees," moreover, could increase the underpayment amount to as much as $131. (Dkt. 1-1, ¶ 62.) The First Amended Complaint includes, as suggested by the Dismissal Order (Doc. 32, at 8), a disclaimer of any attempt to recover any sales taxes, or to obtain injunctive relief. (Dkt. 1-1, ¶ 30 ("Plaintiff does not allege that ACIA underpaid sales taxes in connection with total loss claims and seeks no redress in this action based on sales tax obligations. In addition, Plaintiff does not seek injunctive relief.")).

**F.     ACIA's Emergency Motion to enjoin state court proceedings**

ACIA responded to the filing of the First Amended Complaint by seeking emergency relief enjoining the state court from proceeding and entry of final judgment in favor of ACIA. (Doc. 35.) By Docket Entry dated July 10, 2020, the Court denied ACIA's motion. (Doc. 38.) Among other things, the Court stated in its Docket Entry that "Plaintiff's amended complaint filed in state court did not violate this court's order and does not threaten a judgment or other order from this court. This court dismissed the complaint without prejudice, with leave to amend, and plaintiff's state−court re−filing was consistent with this court's order." (*Id.*) The Court further confirmed that "Defendant's requested relief of an injunction against the state−court proceedings or entry of a final judgment here would not be consistent with the dismissal without prejudice. This court did not intend to terminate the litigation between the parties and will not enjoin the state court." (*Id.*)

**G.     ACIA's Second Notice of Removal**

ACIA did not seek to dismiss the First Amended Complaint in state court for lack of subject matter jurisdiction (as it had earlier forecast it would do in its Emergency Motion (Doc. 35)). Instead, on July 16, 2020, ACIA filed its Second Notice of Removal to remove the First Amended Complaint to this Court. (Dkt. 1.)  The Second Notice of Removal is premised exclusively on

ACIA's argument that the First Amended Complaint was removable "because this Court decided in its Order dated March 27, 2020, that ACIA has satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)." (Dkt.1, ¶¶ 8, 13-17; *see also* Doc. 39, at ¶ 9.) The Second Notice of Removal contains no other statement of the grounds for removal, and it does not contain the evidentiary materials that were included with the First Notice of Removal in case number 20-cv-983.

**H.    ACIA's Motion to reopen case number 20-cv-983**

On July 17, 2020, after filing its Second Notice of Removal, ACIA also filed a Motion to Reopen case 20-cv-983, which also sought to transfer case number 20-cv-4205 to be consolidated with case 20-cv-983 before this Court. (Doc. 39.) The Motion was denied by Order dated July 20, 2020, in which the Court held there was "no need to reopen" case 20-cv-983 "in order to reassign and consolidate the recently removed case." (Doc. 40.) The Court also indicated that it intended to recommend that "Case No. 20 CV 4205 be reassigned forthwith to this court as a refiling of a dismissed case, namely 20 CV 983." (*Id.*) An Order to that effect was issued by the Executive Committee reassigning case number 20-cv-4205 to this Court for all further proceedings. (Dkt. 7.)

**ARGUMENT**

**I.    LEGAL STANDARDS GOVERNING REMOVAL AND REMAND.**

A defendant may remove a case to a federal court with jurisdiction by filing a notice of removal containing a statement of the grounds for removal. 28 U.S.C. § 1446. CAFA allows for "the removal of class actions in which the stakes exceed $5 million." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011); 28 U.S.C. §§ 1332(d)(2), 1453(b).

It is fundamental that "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress

7

pursuant thereto." *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986). For this reason, district courts must "interpret the removal statute narrowly," and any doubt regarding jurisdiction should be resolved in favor of remand to state court. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *see Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993) ("Any doubt regarding diversity jurisdiction should be resolved in favor of the states.").

As the party seeking to invoke the Court's jurisdiction, ACIA bears the burden of proving the existence of federal subject matter jurisdiction by "competent proof." *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2008); *NLFC, Inc. v. Devcom Mid-America, Inc.,* 45 F.3d 231, 237 (7th Cir. 1995). "[J]urisdiction is determined at the time of removal." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)). "Competent proof," means "proof to a reasonable probability that jurisdiction exists." *Target Market Publishing, Inc. v. ADVO, Inc.,* 136 F. 3d 1139, 1142 (7th Cir. 1998). That burden is not changed by CAFA; ACIA must show the requirements of CAFA have been satisfied. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447–49 (7th Cir. 2005).

The starting point in determining the amount in controversy is typically the face of the operative pleading at the time of removal. When jurisdiction is challenged, the removing defendant must provide evidence and prove the amount in controversy. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The Court then determines whether the jurisdictional facts have been proven through competent evidence of record by a preponderance of the evidence. *Id.*

Where a removing defendant supports its estimate of the stakes with competent evidence, its assertion "controls unless a recovery that large is legally impossible." *Back Doctors Ltd.*, 637 F.3d at 830. "[P]art of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands." *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). Calculations will not satisfy

the defendant's burden, therefore, when they amount to "speculation and conjecture." *Ibarra v.*

*Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see In re High Fructose Corn*

*Syrup Antitrust Lit.,* 936 F. Supp. 530, 532-33 (C.D. Ill.1996) ("Speculation will not meet a

removing party's burden of establishing jurisdiction); *King v. Wal-Mart Stores, Inc.,* 940 F. Supp.

213, 217 (S.D. Ind. 1996) ("'Speculation' or the mere 'possibility' that a claim exceeds the

jurisdictional amount in controversy is not enough.").

## II.      THE FIRST AMENDED COMPLAINT IS THE OPERATIVE PLEADING.

An amended complaint supersedes the original complaint and renders it of no legal effect.

*Klein v. Curran*, 2014 WL 5023486, n.2, *1 (N.D. Ill. Oct. 7, 2014) (Shah, J.), citing *Manning v.*

*Ashland Oil Co.*, 721 F.2d 192, 197 (7th Cir.1983). Plaintiff filed his First Amended Complaint

on July 1, 2020, in conformance with this Court's granting him leave to do so. The current

"operative pleading," therefore, is the First Amended Complaint.

## III.     JURISDICTION MUST BE EVALUATED BASED ON THE FIRST AMENDED COMPLAINT, THE OPERATIVE PLEADING AT THE TIME OF THE SECOND NOTICE OF REMOVAL.

In determining whether removal is proper, the court is limited to considering the facts

existing at the time of removal. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993). Whether

subject matter jurisdiction exists is answered by looking at the operative pleading at the time of

removal. The propriety of removal is determined, therefore, on the basis of the plaintiff's complaint

at the time of the Notice of Removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939) (right

to remove is "to be determined according to the plaintiffs' pleading at the time of the petition for

removal"); *see Peck v. Southern Illinois Hosp. Services*, 2020 WL 1248451, *1 (S.D. Ill. Mar. 16,

2020) ("In determining whether an action was properly removed, the Court examines the plaintiff's

Complaint as it existed at the time the defendants filed their Notice of Removal."), citing *Shannon v. Shannon*, 965 F.2d 542, 545 (7th Cir. 1992).

Where there are two attempts at removal, federal jurisdiction is thus based on the operative pleading at the time of the second removal petition. *See Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp.2d 838, 842 (S.D. Ill. 2006); *In re Diet Drugs*, 282 F.3d 220, 232 n. 8 (3rd Cir. 2002) (where a second notice of removal is filed it is evaluated based on subsequent pleading); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018, 1022 (N.D. Cal. 2003) (a second notice of removal was properly evaluated based on changes in circumstances that illuminated the amount in controversy); *One Sylvan Road N. Assocs. v. Lark Int'l, Ltd.*, 889 F.Supp. 60, 62-64 (D. Conn. 1995) (evaluating a second removal of a case in diversity jurisdiction based on then currently operative pleadings); *see also Nicholson v. National Accounts, Inc.*, 106 F.Supp.2d 1269, 1271 (S.D. Ala. 2000) (a second notice of removal may be filed based on subsequent pleadings).

It necessarily follows that when "considering a motion for remand, the court must examine the plaintiff's complaint at the time of the defendant's removal and assume the truth of all factual allegations contained within" that pleading. *Ayotte v. Boeing Co.*, 316 F.Supp.3d 1066, 1072 (N.D. Ill. 2018), citing *Elftmann v. Vill. of Tinley Park*, 191 F.Supp.3d 874, 878 (N.D. Ill. 2016). Here, that pleading is the First Amended Complaint.

## IV.    ACIA FAILS TO PROVIDE GROUNDS FOR REMOVAL OF THE FIRST AMENDED COMPLAINT.

As noted, ACIA provides no basis for removal of the First Amended Complaint in the Second Notice of Removal beyond its assertion that the Court had denied a Motion to remand in case number 20-cv-983. ACIA offers no jurisdictional analysis or basis for removal of the First Amended Complaint, specifically.  Since jurisdiction must be evaluated at the time of the notice is filed, based on the operative pleading, ACIA's failure to offer any basis predicated on the First

Amended Complaint means the Second Notice of Removal fails to meet the requirements of 28

U.S.C. § 1446. For that reason, alone, remand is warranted.[3]

## V.     ACIA FAILS TO MEET ITS BURDEN TO SHOW, BY COMPETENT PROOF, THAT THE FIRST AMENDED COMPLAINT IS SUBJECT TO REMOVAL.

In its First Notice of Removal, ACIA relied on the Legue Declaration as evidence that

jurisdiction existed, based on the allegations of the operative pleading at that time. In its Order,

the Court made clear it denied the Motion to Remand based on that evidence and (1) the theoretical

possibility (lack of "impossibility") that Plaintiff or class members could, under the Original

Complaint as pled, seek recovery of underpaid sales taxes based on the applicable standard; and

(2) the Complaint sought injunctive relief. (Doc. 25.)

ACIA's Second Notice of Removal does not include any evidence. ACIA relies instead on

references to case 20-cv-983, and the Court's evaluation of jurisdiction in that matter based on the

operative Original Complaint. As discussed above, what matters here, however, is the operative

pleading at the time of the Second Notice of Removal – the First Amended Complaint.

### A.     The First Amended Complaint does not seeks to recover for underpayment of sales taxes and does not request injunctive relief.

The Court's analysis must begin "by looking at plaintiff's state court complaint." *See Shaw*

*v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir. 1993). In other words, to determine whether the

jurisdictional threshold is met, the Court must evaluate "the controversy described in the plaintiff's

complaint and the record as a whole, as of the time the case was filed." *Uhl v. Thoroughbred Tech.*

---

[3]     Although ACIA relies on the notion of "continuing" jurisdiction from case number 20-cv-983, citing *Carter v, Tennant Co.,* 383 F.3d 673 (7th Cir. 2004), in order to sidestep its burden of proof as to jurisdiction for the First Amended Complaint (Dkt. 1, ¶¶ 15-17), this Court already recognized that the circumstances presented are akin to "a refiling of a dismissed case" in state court (Doc. 40; *see also* Dkt. 7), which triggers a *de novo* review of the new removal and thus jurisdiction. *See Alsup*, 435 F.Supp.2d at 842; *In re Diet Drugs*, 282 F.3d at 232 n. 8; *Johnson*, 280 F.Supp.2d at 1022; *One Sylvan Road*, 889 F.Supp. at 62-64.

*and Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (citing *Shaw*).

As reflected in the First Amended Complaint, this action arises out of, and seeks redress for ACIA's improper underpayment of mandatory state title and transfer fees in connection with its payment of automobile insurance coverage claims where the vehicle at issue was a total loss. Pappas suffered a total loss to his insured vehicle. (Doc. 1-1, ¶¶ 14, 55). ACIA was required, but failed, to pay Pappas the full amount of mandatory state fees involved with the purchase of a replacement vehicle which were due to him as part of his claim for coverage. *Id.*, ¶¶ 14-15, 55-62. ACIA underpaid the mandatory state fees by at least $30.00. *Id.*, ¶¶ 61-62.

Unlike the superseded Original Complaint, moreover, the First Amended Complaint affirmatively disclaims any intention to seek to recover sales tax or to obtain injunctive relief:

> Plaintiff does not allege that ACIA underpaid sales taxes in connection with total loss claims and seeks no redress in this action based on sales tax obligations. In addition, Plaintiff does not seek injunctive relief. (*Id.*, ¶ 30.)

And, as the Court stated, if Plaintiff "clarifies his claim to exclude unpaid taxes and injunctive relief from the case, there would likely be no federal jurisdiction over the dispute." (Doc. 32, at 8.)

**B.      The Legue Declaration compels the conclusion that a $5 million controversy is now impossible based on the First Amended Complaint.**

Even assuming, *arguendo*, that this Court can take into account the Legue Declaration (Doc. 1-2), once the amount of sales tax is removed, the Legue Declaration merely identifies an amount of mandatory fees "potentially" in controversy for the First Amended Complaint as ranging from $1,766,535.00 to $3,384,735.00. Even at the maximum level averred by ACIA based on the Legue Declaration, therefore, the compensatory damages at issue at the time of removal would be less than $3.5 million, thus well below the $5 million CAFA threshold.

In the absence of any proof beyond the Legue Declaration, and none was offered by ACIA, the conclusion is inescapable that ACIA failed to meet its burden to prove $5 million is in

12

controversy. ACIA thus has failed to prove "to a reasonable probability that jurisdiction exists."

*See Tylka*, 211 F.3d at 448; *NLFC,* 45 F.3d at 237; *Target Market,* 136 F.3d at 1142; *see also*

*Jeffery v. Cross Country Bank*, 131 F.Supp.2d 1067, 1069-70 (E.D. Wis. 2001) (disclaimer in

amended pleading effective to preclude federal jurisdiction). Indeed, ACIA's evidence proves a

$5 million controversy is impossible. Thus, as the Court opined, with the clarifications in the First

Amended Complaint, jurisdiction does not exist. (*See* Doc. 32, at 8.)

> **C.** **The Court is required to apply the removal statute strictly, and thus remand to state court, because federal jurisdiction does not exist.**

It is abundantly clear from the flurry of motion practice in case number 20-cv-983 that

ACIA does not agree with the Court's Order granting Plaintiff leave to file an amended complaint

in either state court or this court. Particularly, ACIA feels aggrieved by the Court's grant of leave

to file the amended pleading in state court. ACIA, however, chose not to move to reconsider that

Order or seek to appeal from it. Instead, by doing nothing more than invoking the Court's decision

on remand in case number 20-cv-983, ACIA essentially seeks to use the Second Notice of Removal

to induce the Court to reconsider its earlier decision to grant leave. That transparent motivation is

procedurally improper and should be rejected. *See Nicholson v. Nat'l Accounts, Inc.*, 106

F.Supp.2d 1269, 1271-72 (S.D. Ala. 2000) (rejecting defendant's second removal as "nothing

more than a creative attempt to have the court reconsider" its prior order); *Domenico v. Veolia*

*Transp., Inc.*, 2010 WL 3516901, *1 (D. Colo. Aug. 31, 2010) (rejecting re-removal effort as an

improper attempt to seek reconsideration of earlier order related to first removal petition); *Krpic*

*v. Progressive Express Ins. Co.*, 2020 WL 2611595, *2 (M.D. Fla. May 22, 2020) (same).

Likewise, AICA's repeated implication that it somehow is unfair that this Court granted

Plaintiff leave to file his amended complaint in state court does not change the fact that jurisdiction

must be evaluated strictly based on the operative pleading at the time of removal. *See Dudley v.*

*Putnam Inv. Funds*, 2007 WL 329129, at *8 n. 6 (S.D. Ill. Feb. 1, 2007) (holding that, "[t]he unusual procedural history of this case notwithstanding, the Court is required to apply the removal statutes strictly, with a presumption in favor of remand, ... and the Court has not been empowered by Congress ... to fashion equitable removal solutions to procedural complexities ... in order to smooth a defendant's path to federal court via removal."), citing *Rutherford v. Merck & Co.*, 428 F.Supp.2d 842, 852 (S.D. Ill. 2006). To the extent equitable considerations have any bearing on the exercise of federal jurisdiction on removal, those equities are to be weighed against removal and in favor of state court. *Disher v. Citigroup Global Markets, Inc.*, 487 F.Supp.2d 1009 (S.D. Ill. 2007), citing *Rutherford*, 428 F.Supp.2d at 852; *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 694 (5th Cir.1995) ("[T]o the extent we might harbor some doubt about the equities in this case, we are required to resolve those doubts in favor of nonremoval"); *Moore v. Mobil Oil Corp.*, 904 F.Supp. 587, 588 (E.D. Tex. 1995) (rejecting the defendants' "argument sounding in equity and public policy" because the "court cannot rewrite the removal statute to grant itself subject matter jurisdiction over this action. ... [I]t is abundantly clear that Congress has not vested in federal district courts the power to fashion equitable removal solutions to procedural complexities."); *see also Wolf v. Kennedy*, 540 F,Supp.2d 955, 963 (N.D. Ill. 2008) (citing *Moore*).

## VI.    REMAND IS REQUIRED AND ALL OTHER MOTIONS ARE THUS MOOT

ACIA has again filed a motion to dismiss. (*See* Dkt. 10, 11.) This Court lacks jurisdiction, however, to consider that motion. Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"; *see also Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994) (citing same). The mandatory nature of § 1447(c) makes clear that remanding the case is this Court's only option. *See, e.g., Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018)

14

(A suit dismissed for lack of jurisdiction cannot also be dismissed with prejudice; that is a disposition on the merits, which only a court with jurisdiction may render); *see McIntyre v. Fallahay*, 766 F.2d 1078, 1082 (7th Cir. 1985) ("If the case did not belong in federal court at all, it should be remanded rather than dismissed"); *see also Salem v Egan*, 2019 WL 3562662, \*5 (N.D. Ill. July 29, 2019) ("Because this Court lacks jurisdiction, it will not address Defendants' Rule 12(b)(6) challenge.") This Court does not have jurisdiction over this case. As a result, the Court should grant Plaintiff's Motion to Remand and deny ACIA's Motion to dismiss as moot.

## CONCLUSION

The operative First Amended Complaint does not contain allegations which establish CAFA jurisdiction, particularly the amount in controversy. ACIA bears the burden to establish that amount and all other CAFA elements by "competent proof." It has not done so. ACIA has thus failed to meet its burden to prove "to a reasonable probability that jurisdiction exists." Therefore, the case should be remanded.

Respectfully submitted,

GEORGE PAPPAS, individually, and on behalf of all others similarly situated,

By: /s/ *Jeffrey A. Berman*
    One of their Attorneys

Brian J. Wanca
Jeffrey A. Berman
Patrick J. Solberg
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847/368-1500
Email: bwanca@andersonwanca.com
Email: jberman@andersonwanca.com
Email: psolberg@andersonwanca.com

Counsel for the Plaintiff and the Class

15

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2020, I electronically filed the foregoing PLAINITFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND with the Clerk of the Court by using CM/ECF system, which will send a notice of the electronic filing to counsel of record registered with that system.

/s/ *Jeffrey A. Berman*