IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE PAPPAS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:20-cv-04205 ) |
| AUTO CLUB INSURANCE ASSOCIATION, | ) Judge: Manish S. Shah ) |
| Defendant. | ) |

## ACIA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Auto Club Insurance Association ("ACIA") presents this Reply to Plaintiff's Opposition to ACIA's Motion to Dismiss:

## PLAINTIFF'S FIRST AMENDED COMPLAINT IS AN IMPROPER ATTEMPT TO URGE CLAIMS THAT WERE PREVIOUSLY DISMISSED BY THE COURT

Plaintiff's First Amended Class Action Complaint squarely ignores the rulings of this Court on Defendant's original Motion to Dismiss. In his Opposition to Defendant's Motion, Plaintiff focuses on the fact that the Court's original dismissal of his claims was "without prejudice" in an attempt to justify the claims in his Amended Class Action Complaint. However, the Court's dismissal without prejudice was not an invitation for Plaintiff to simply re-urge claims which mirror the original claims dismissed by the court – yet that is exactly what Pappas has done here. A simple side by side comparison of the Court's June 18, 2020 dismissal order (Doc. 32) to Plaintiff's Opposition (Dkt. 20) may be the very best evidence that Plaintiff is before the Court seeking an improper second bite at the apple.

<u>Dismissal Order</u>: "The Association's liability for loss was limited to the <u>lesser of</u> the actual cash value or the cost of replacement…" (Doc. 32, p.3)(Emphasis added); and

1

"The actual cash value was less than the cost of replacement or repair. That is what the Association paid…and the Association never contracted to pay anything more" (Id., p.4).

Plaintiff's Opposition: "…ACIA Promised To Pay Pappas the Cost To Replace His Totaled Vehicle And Failed to Do So." "And, in doing so, ACIA breached the contract with Pappas."(Dkt. 20, ¶I, p.6).

**

Dismissal Order: "Pappas's proposed interpretation of the policy's <u>unambiguous</u> terms is unreasonable." (Doc 32, p.4)(Emphasis added); and

"Since the policy is <u>unambiguous</u>, the Association's post-collision communication is inadmissible to vary its terms." (Id, p.6)(Emphasis added).

Plaintiff's Opposition: "ACIA's failure to define these critical terms and inherent lack of clarity renders the policy ambiguous…" (Dkt. 20, ¶A, p.7); and

"Any doubt about whether ACIA promised to pay…is removed by the fact that ACIA and its agents explicitly stated that it was paying Pappas for those costs in its post-accident correspondence." (Id.)

**

Dismissal Order: "This policy caps the Association's liability at the actual cash value of Pappas's vehicle at the time of the collision. Just because other contracts promise make-whole remedies…does not mean that the Association is on the hook for registration, title, and license plate fees when its policy dictates a different limit (actual cash value) that is <u>exclusive</u> of those fees." (Doc 32, p.5-6).

Plaintiff's Opposition: "ACIA IS Required To Pay Transfer And Title Fees As Part OF Its Obligation To Respond To A Total Loss Claim." (Dkt. 20, ¶A, p.7); and

"By Failing To Properly Pay The Full Amount OF Transfer And Title Fees, ACIA Failed To Meet Its Obligation Under The Policy." (Id., ¶B, p.8).

"By not paying the full amount of title and transfer fees, ACIA has failed to make Pappas whole and failed to meet its contractual obligations." (Id., p.10).

**

Perhaps in filing his Amended Complaint Plaintiff assumed that a different court would be reviewing his second run at these previously-rejected claims, but that is indeed not the case.

This Court continues to have the case before it, and is faced with the exact same claims by Pappas that were already dismissed once by the Court.

Ironically, in his Opposition to ACIA's New Motion to Dismiss, Plaintiff points out to the Court that Defendant ACIA has raised many of the same arguments as in its prior Motion to Dismiss which was granted by the Court. (Dkt. 20, p.1). It is true that Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint does raise many of the same arguments as in its previous motion to dismiss, but it does so only because Plaintiff's Amended Complaint urges the same claims that have already been rejected by this Court. Plaintiff's First Amended Class Action Complaint has few substantive differences from the original Class Action Complaint. Instead of attempting to assert different claims, Plaintiff is seeking another bite at the apple by raising the same claims that were previously dismissed and therefore his claims should be dismissed once again.

**PLAINTIFF IS INCORRECT IN HIS ASSERTION THAT ACIA OWED TRANSFER AND TITLE FEES AS PART OF ITS ACV SETTLEMENT WITH PLAINTIFF**

In Section I of his Opposition Plaintiff once again argues that ACIA was required to pay him "mandatory" transfer and title fees for his replacement vehicle. While Plaintiff is persistent in this argument, the fact remains that in previously dismissing Plaintiff's claim for breach of contract, this Court correctly held that under Pappas' insurance policy with ACIA, actual cash value ("ACV") is determined based on "market value, age and condition". (Doc. 32, p.4). The Court found Plaintiff's argument that ACV includes all the fees that would have to be paid to the state to make the vehicle legal to drive, as being "unreasonable" and "not consistent with the plain, ordinary understanding of the terms "market value" or "age and condition". Id. Thus, the Court held that ACV as defined in the policy does <u>not</u> include those fees. Id.

As stated in ACIA's Motion to Dismiss, this finding by the Court in dismissing Plaintiff's original claims is consistent with rulings by Judge Virginia M. Kendall in *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 47120 (N.D. Ill. 3/18/2020, @7 ("the policy does not include sales tax and title transfer fees" in ACV); Mtn. To Alter Jdgmt. Denied, *Coleman* 2019 U.S. Dist. LEXIS 127940 (N.D. Ill. 1/31/2020 at 8)(policy definition of ACV as the amount it would cost "to buy a comparable vehicle" is "limited to the purchase price of the vehicle itself and does not include attendant 'replacement costs' like sales tax, title fees, registration fees, or the like.").

Despite the clear language of the ACIA policy that ACV is determined by market value, age and condition, and despite this Court's June 18, 2020 ruling that ACV does not include fees associated with the purchase of a replacement vehicle, Plaintiff continues to argue that "State title and transfer fees are part of the ACV because they are mandatory costs involved with the purchase of any replacement vehicle …" and that ACIA still owes "mandatory fees" to Plaintiff (Amended Complaint, Dkt. 1-1, par. 5, 13, 51, 77, and 79; Plaintiff's Opposition, Dkt. 20 ).

If there was any doubt that this entire line of argument by Plaintiff is an attempt to merely re-litigate claims already dismissed by the Court, one need not look any further than the footnotes in Plaintiff's Opposition. Specifically, footnote 4 to the Opposition is an acknowledgement by Plaintiff that he is seeking a new conclusion to issues that the Court has already ruled on, and found in ACIA's favor. (Dkt. 20, p. 9). As this Court has previously held, ACIA did not owe transfer and title fees to Pappas as part of its ACV settlement, and therefore Pappas' claims must be dismissed.

4

## PLAINTIFF IS INCORRECT IN HIS ASSERTION THAT ACIA "PROMISED TO PAY" TRANSFER AND TITLE FEES AS PART OF ITS ACV SETTLEMENT WITH PLAINTIFF

With regard to Plaintiff's argument that ACIA "promised to pay" transfer and title fees as part of an ACV settlement, this Court has already determined that ACIA's obligation under its insurance policy with Plaintiff is to pay *the lesser of* ACV or the amount necessary to replace the damaged vehicle. Plaintiff appears to equate ACV and replacement cost throughout his argument, but these are not one and the same. And since Plaintiff concedes that ACIA paid him the ACV of his vehicle, and this Court has found ACV does not include the mandatory state fees, this Court determined that ACIA has fulfilled its contractual obligation to Plaintiff. Thus, there is no breach of contract by ACIA.

In holding that ACIA's contractual liability is limited to the lesser of ACV or the amount necessary to replace the damaged vehicle, this Court cited to *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 16439 (N.D. Ill. Jan. 30, 2020), Mtn. To Alter Jdgmt. denied 2020 U.S. Dist. LEXIS 47120 (N.D. Ill. Mar. 18, 2020), a recent Northern District of Illinois case with similar facts and allegations to the case at bar. In *Coleman*, the Plaintiff argued that the Defendant's failure to pay sales tax as part of a total loss settlement constituted a breach of the insurance contract. *Id*, at 2. The Honorable Virginia M. Kendall held that the policy "makes clear" that ACV "is the limit of (USAA's) lability for total loss – not the amount it promises to pay in the event of total loss." *Id* at 9. Thus, Judge Kendall granted Defendant's Motion to Dismiss both the individual and putative class claims, stating "Because there is no language in the policy or the related letters that obligates Defendants to pay Plaintiff the 'actual cash value' of her vehicle in the event of a total loss, Plaintiff fails to state breach of contract claims against Defendants." *Id*, at 10.

The Seventh Circuit recently further clarified the "limit of liability" vs. "promise to pay" distinction. In *Sigler v. Geico Cas. Co., et al*, -- F.3d --, No. 19-2272, 2020 WL 4251699 (7th Cir. Jul. 24, 2020) the Seventh Circuit affirmed the District Court's order dismissing the Plaintiff's claims wherein Plaintiff asserted that sales tax, title and tag transfer fees are always part of actual cash value in a total loss claim; essentially the same argument made by Pappas herein. In its opinion, the Court stated that the Limit of Liability section of the insurance policy doesn't promise to pay these costs; it simply describes the most that the insurer will pay in the event of a covered loss. The Seventh Circuit's holding in *Sigler* is directly in line with this Court's previous order finding that ACIA fulfilled its contract to Plaintiff, and dismissing Plaintiff's claims. Interestingly, Plaintiff's Opposition makes no mention of the *Sigler* decision, which had previously been filed by Defendant with its "Notice of Recent Decision." Dkt. 13 and 13-1.

### PLAINTIFF'S ATTEMPT TO PLACE AMBIGUITY IN ACIA'S INSURANCE POLICY WHERE NO SUCH AMBIGUITY EXISTS IS IMPROPER

Likely realizing that established case law falls directly contrary to his arguments herein, Plaintiff devotes a portion of his Opposition to an argument that ACIA doesn't properly define "total loss" or "cost of…replacement" in its insurance policy, allegedly causing a lack of clarity rendering the insurance policy ambiguous. (Dkt. 20, p. 7). This line of argument is in direct contradiction with the Court's June 18, 2020 dismissal order which stated, in part, "Pappas's proposed interpretation of the policy's **unambiguous** terms is unreasonable." (Doc. 32, p.4)(Emphasis added). In support of his spurious argument, Plaintiff also references post-accident correspondence between ACIA and Plaintiff for the proposition that this extrinsic evidence is equal to a "promise to pay." Interestingly, once again the analysis need not proceed past Plaintiff's footnotes to determine that these arguments are an attempt by Plaintiff to take a second bite of the apple in this case. In footnote 3 on page 7 of his opposition, Plaintiff

6

acknowledges that in its June 18th dismissal order this Court specifically concluded that this post-accident correspondence being raised once again by Plaintiff "is extrinsic to the express terms of the Policy and thus is not germane to contract construction." (Dkt. 20, p.7, fnt3). In its Order, the Court stated that "Since the policy is unambiguous, the Association's post-collision communication is inadmissible to vary its terms." (Doc. 32, p. 6). In other words, the Court has previously found that ACIA's insurance policy is <u>not</u> ambiguous and that ACIA has not breached its contract with Plaintiff. Where, as here, the meaning of the policy can be determined on the face of the policy, "*it is unnecessary to consider the extrinsic documents plaintiffs point to in their brief generated subsequent to the issuance of the policy to assist in determining the policy's meaning.*" *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 749 (Ill.App. 1st Dist. 2004). There is simply no merit in revisiting these exact same issues a second time merely because Plaintiff did not like the results the first time they were presented to the Court and dismissed.

## ***DEFENDANT HAS NOT "ATTEMPTED TO ARTIFICIALLY LIMIT THE SCOPE OF THE CLASS" AS ALLEGED BY PLAINTIFF – PLAINTIFF'S CLAIMS DO NOT MEET THE REQUIRMENTS TO MAINTAIN A CLASS PURSUANT TO RULE 23***

To maintain a class action, a plaintiff "must affirmatively demonstrate [their] compliance with Rule 23." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33, 133 S.Ct. 1426 (2013). Rule 23(d)(1)(D) authorizes the Court to strike class allegations where it is plain from the pleadings that class certification is inappropriate. *See, e.g., Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming District Court's granting of motion to strike class allegations); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.,* 2012 U.S. Dist. LEXIS 108696 at 8 (M.D. Fla. 2012) (striking class allegations where "Given the nature of the claims and individual factual inquiries required, it is apparent the individualized issues are predominant and this suit cannot proceed as a class action").

In this case, Plaintiff seeks to certify a multi-state class of ACIA's insureds across at least eight different states (See Amended Complaint ¶¶5, 13, 30, 32, 44, 45, 47, 48, 64, 66(c) and 74). Plaintiff's proposed class involves the application of the laws from numerous states, as well as interpretation of insurance policy language in light of each of those state's laws, statutes and regulations, precluding any finding of commonality or predominance as required by Rule 23. Additionally, Plaintiff's Complaint does not assert sufficient facts concerning ACIA's alleged conduct outside of Illinois to support the requirements of Rule 23.

In his Opposition, Plaintiff makes the broad assumption that "While ACIA does not actually cite *Bristol-Myers Squibb v Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017), it is clear its standing argument, at least, is based on the same theory underlying that decision." In making this statement, Plaintiff is apparently urging the Court to find that ACIA is merely pointing to *Bristol-Myers* blindly (and indirectly) and asserting that Pappas cannot represent any non-Illinois class members. (Dkt. 20, p. 11-13). While Defendant ACIA does find the *Bristol-Myers* holding persuasive and agrees with the general proposition that an Illinois Plaintiff lacks standing to represent a multi-state class of unnamed Plaintiffs, ACIA need not rely solely on a standing argument here, as a detailed analysis of the facts in this case illustrates that the substantive Rule 23 issues also fall squarely in line with ACIA's Motion to Dismiss. Continuing his argument, Plaintiff relies on the Seventh Circuit's decision in *Mussat v. IQVIA, Inc.*, 953 F. 3d 441 (7th Cir. 2020) for the proposition that ACIA's Motion should be denied. Plaintiff's reliance on *Mussat* is inapplicable to the case at hand. In *Mussat*, the Court specifically held that in a Rule 23 class action a lead plaintiff earns the right to represent the interests of absent class members "**by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b)**." Id., at 447 (emphasis added). This case is clearly distinguishable as ACIA has shown

that Plaintiff's Amended Complaint does not assert sufficient facts concerning ACIA's conduct outside of Illinois to meet the requirements of Rule 23. *Mussat* is further distinguishable because unlike the present case, it involved a question of personal jurisdiction over a purported nationwide class brought under a federal statute *which applied the same in every state.* Here, Pappas is an Illinois resident suing ACIA for the breach of an Illinois insurance policy under Illinois law. Pappas simply has no standing to sue on behalf of unnamed plaintiffs for violations of other states' varying insurance laws and interpreting other states' insurance policies.

Plaintiff's Amended Complaint does not allege any specific facts concerning ACIA's alleged conduct across multiple states, or the proposed multi-state class members' actual entitlement to state fees sufficient to establish the requirements of Rule 23. *See Bauer v. Dean Morris, L.L.P.,* Civil Action No. 08-5013, 08-5014, 2011 WL 3924963, at *2 (E.D. La. Sept. 7, 2011) ("[c]lass allegations may be Dismissed where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate"). The only specific factual allegations presented in Plaintiff's Amended Complaint concern ACIA's alleged conduct in Illinois and pertain exclusively to the proposed Illinois-based class. For example, Plaintiff cites to specific insurance policy forms issued in Illinois (*See* Amended Complaint ¶ 31), and then issues a blanket allegation that on information and belief the form "is a standard policy form that has been used ACIA [sic] for its Automobile Insurance Policies across the states in which it provides coverage." Amended Complaint ¶32. This statement is nothing more than speculation and conjecture in an attempt to create an improper multi-state class. Further, while Plaintiff does include a broad statement that "at least twenty-eight states, including Illinois, specifically require, through applicable statute or regulation, that insurers pay all monetary title and transfer fees in connection with a total loss" the footnote to this statement indicates that four of the eight

9

states included in Plaintiff's putative class (Michigan, New York, Pennsylvania and Wisconsin) do not maintain such requirements. *See* Amended Complaint ¶ 47, n.4. Plaintiff fails to identify any authority for the proposition that title and transfer fees are in fact owed as part of the replacement of vehicles in half of the eight states in which Plaintiff indicates ACIA writes insurance policies and whose insureds are part of the proposed class. In a case with very similar allegations to this case, the United States District Court for the Middle District of Florida denied certification of a proposed eight-state class when Plaintiff failed to provide citations or authority "showing that each state charged mandatory tag and title transfer fees – a prerequisite to a claim that Defendants owed putative class members such fees" *See Jones v. Government Employees Ins. Co.*, 2019 WL 1490703 at 8. (M.D. Fla. 2019).

Plaintiff's reliance on *Bandurin v. Aeroflat Russian Airlines*, 2020 WL 362781 (N.D. Ill. Jan. 22, 2020) is misguided here. Plaintiff generalizes that ACIA's "attack on the scope of the class is premature" and pulls one sentence out of *Bandurin* in an attempt to support his argument. However, the comment made by this Court in *Bandurin,* "that is not an issue I need to address at the motion-to-dismiss stage of the case" was in response to the Defendant's motion to strike the plaintiffs' class definitions on the basis that they were overly broad and therefore the court lacked personal jurisdiction (Id., p.11). In this case ACIA is not merely arguing Pappas lacks standing due to overbreadth of a class definition. To the contrary, ACIA has shown that Plaintiff's Amended Complaint does not allege any specific facts concerning ACIA's alleged conduct across multiple states, or the proposed multi-state class members' actual entitlement to recovery sufficient to establish the requirements of Rule 23. These are two separate arguments, and *Bandurin* is not applicable to Defendant's 12(b)(6) claims.

Plaintiff's Complaint fails to include anything but conclusory allegations concerning ACIA's conduct outside of Illinois. Plaintiff fails to identify any other insured who had a claim outside of Illinois or to whom ACIA failed to pay applicable fees. In sum, Plaintiff's Complaint, therefore, does not comply with *Mussat* "by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b)" and therefore Plaintiff's claims on behalf of the multi-state class should be dismissed.

Respectfully submitted this 14th day of September, 2020.

/s Nick Papastratakos
Nick Papastratakos (6194210)
Hilbert & Power, Ltd.
77 West Washington Street
Suite 1217
Chicago, Illinois 60602
Attorneys for Auto Club Insurance Association