**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE PAPPAS,

   Plaintiff,

  v.

AUTO CLUB INSURANCE ASSOCIATION,

   Defendant.

No. 20 CV 4205

Judge Manish S. Shah

**ORDER**

  Plaintiff's motion to remand [14] is denied. Defendant's motion to dismiss [10] is granted. All claims are dismissed with prejudice. Enter judgment and terminate civil case.

**STATEMENT**

*Background*

  Plaintiff George Pappas had a car insurance policy with defendant Auto Club Insurance Association. [1-1] ¶ 31.[1] Defendant promised to pay for "loss caused by" a collision. [1-1] ¶ 35. The policy defined "loss" as "direct and accidental physical damage to" to the car. [1-1] ¶ 37. Defendant's limit of liability was the lesser of either the "actual cash value" of the vehicle at the time the loss occurred, or "the amount necessary to repair or replace" it with a similar make, model, and year. [1-1] ¶¶ 39. The actual cash value was determined by the "market value, age and condition at the time the loss occurred." [1-1] ¶ 40.

  Pappas was involved in a crash that rendered his Jeep a total loss, and he filed a claim. [1-1] ¶ 55. Defendant used a third party to calculate the actual cash value of the totaled car, which was $8,892 [1-1] ¶ 56–59. Defendant also paid Pappas 7.25% in sales tax and a $120 title fee. [1-1] ¶¶ 56, 59. When Pappas bought a replacement vehicle, he paid a mandatory $150 title fee and a $101 license fee, so defendant underpaid him for the fees by $30 to $131. [1-1] ¶ 62. Pappas alleges that the actual cash value of the car encompassed mandatory vehicle replacement fees, so defendant

---

[1] Unless otherwise noted, bracketed numbers refer to entries on District Court Docket 20-cv-4205. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the first amended complaint. [1-1].

breached the agreement by not fully reimbursing him for those fees. [1-1] ¶ 51. Pappas seeks to represent a class of policyholders with identical collision coverage provisions who he says were also underpaid for license and title fees. [1-1] ¶¶ 32–34, 66.

Pappas filed his first complaint in state court, and defendant removed it to federal court, generating Docket Number 20-cv-983. Pappas moved to remand, and defendant moved to dismiss for failure to state a claim. Dkt. 20-cv-983, [8], [11]. I denied the motion to remand because it was not legally impossible for the purported class to meet the $5 million amount in controversy, as required to establish jurisdiction under the Class Action Fairness Act. Dkt. 20-cv-983, [25]. The complaint was ambiguous about whether defendant underpaid fees it owed, or both fees and sales taxes. Though Pappas himself only sought reimbursement for fees, another member of the class might seek reimbursement for both fees and unpaid sales tax, which made the $5 million threshold possible. Dkt. 20-cv-983, [25]. Further, because Pappas asked for injunctive relief, there was some likelihood of cost to defendant from an injunction. Finally, although punitive damages are generally not available on a breach-of-contract claim unless the plaintiff alleges tortious conduct, it wasn't legally impossible that Pappas might add a tort claim. Dkt. 20-cv-983, [25].

I dismissed Pappas's claims without prejudice for failure to state a claim. I gave Pappas leave to file an amended complaint but noted that if he removed injunctive relief and sales tax from the case, there would not be federal jurisdiction. I told him to file a status report if he chose to refile in state court. Dkt. 20-cv-983, [32]. Pappas filed an amended complaint on the same docket in state court, and the federal case was terminated. Dkt. 20-cv-983, [33], [34]. In the amended complaint, Pappas sought "no redress in this action based on sales tax obligations." [1-1] ¶ 30. He also disclaimed any injunctive relief. [1-1] ¶ 30.

Defendant moved to enjoin the state court from deciding anything, on the grounds that the state court had no jurisdiction over the case. Dkt. 20-cv-983, [35]. I denied that motion, since Pappas's refiling was consistent with the prior order dismissing the claims without prejudice. Dkt. 20-cv-983, [38]. Defendant removed the state-court case, and a new federal docket was created and assigned to a different judge. [1]. The next day, defendant moved to reopen Docket 20-cv-983, reassign the newly removed case onto the original docket, and consolidate the two cases. Dkt. 20-cv-983, [39]. I denied that motion as unnecessary and requested that the newly removed case be reassigned to me as a refiling of a dismissed case. Dkt. 20-cv-983, [40]. Defendant now moves to dismiss the amended complaint for failure to state a claim, and Pappas again moves to remand. [10], [14].

2

*Motion to Remand*

The Class Action Fairness Act creates federal jurisdiction when a class has 100 or more class members, at least one class member is diverse from at least one defendant, and more than $5 million is in controversy. *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). The party invoking federal jurisdiction bears the burden of demonstrating it. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617–18 (7th Cir. 2012). Once the removing party has plausibly explained how the stakes exceed $5 million, the case stays in federal court unless it is legally impossible for the plaintiff to recover that much. *Roppo*, 869 F.3d at 578; *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011).

According to Pappas, the case should be remanded because there is no federal jurisdiction under CAFA. He relies on the amended complaint, which removes sales tax and injunctive relief from the case. Defendant points to my order denying Pappas's first motion to remand because it was legally possible for the amount in controversy to be more than $5 million, based on the original complaint. In defendant's view, nothing has changed.

Jurisdiction is determined at the time the case is removed to federal court. *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 951 n.2 (7th Cir. 2020), *reh'g denied* (July 10, 2020). Once the court's jurisdiction is secure, subsequent events that reduce the amount in controversy "do not oust the district court's jurisdiction." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)). So if a plaintiff reduces the prayer for relief or drops a claim after removal, the federal court nevertheless retains jurisdiction because it had jurisdiction when the case was removed.

The original complaint doesn't always reflect the factual reality at the time of removal. *Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 473 (2007). When a plaintiff frames the amount in controversy in the original complaint in a "confusing or ambiguous" way, a court may interpret a subsequent filing as an attempt to clarify the facts that existed at the time of removal. 14A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3702.4 (4th ed.); *see also State Farm Mut. Auto. Inc. Co. v. Powell*, 87 F.3d 93, 97 (3d Cir. 1996) (noting the difference between subsequent events that change the amount in controversy after removal and subsequent revelations that clarify it).

Jurisdiction must be assessed at the time the original complaint was removed under the time-of-filing rule. Although the amended complaint was assigned to a separate docket, no one disputes that it's a continuation of the original case filed on Docket 20-cv-983. Defendant is correct that, once the case was removed, the state court had no jurisdiction over it. *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 700 (2020) (once a notice of removal is filed, the state court

3

shall "proceed no further" until the case is remanded (quoting 28 U.S.C. § 1446(d))). I should not have suggested that Pappas refile a complaint in state court; that was a mistake on my part and caused an unnecessary detour that complicated the procedural history.

Pappas is incorrect that the amended complaint supersedes the initial complaint for jurisdictional purposes. An amended complaint "becomes the operative complaint" for assessing the merits, *see Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 890 (7th Cir. 2016), but that doesn't change the time-of-filing jurisdictional rule. My earlier statement that there would be no federal jurisdiction over an amended complaint that jettisoned sales tax and injunctive relief was imprecise (if not outright wrong). The facts existing at the time of removal can be clarified, but once jurisdiction is secure, a federal court retains the power to decide the dispute.

At the time the original complaint was removed, Pappas was a citizen of Illinois and defendant was a citizen of Michigan, and Pappas's proposed class included more than 100 members. *See* Dkt. 20-cv-983, [1] ¶¶ 9–12, [1-1] ¶¶ 12, 15. According to defendant, 13,607 total loss claims were filed in the six states where defendant underwrites car insurance, within each state's applicable statute of limitations. Dkt. 20-cv-983, [1] ¶ 12. As to the amount in controversy, Pappas has never claimed that defendant failed to reimburse him for his sales taxes, but, in his original complaint, he broadly referred to vehicle replacement costs as "title, registration and license plate fees and taxes." Dkt. 20-cv-983, [1-1] ¶¶ 41, 43, 74. When defendant removed the original complaint, it estimated that unpaid title, registration, and license plate fees for all members of the proposed class could total $3.4 million. Dkt. 20-cv-983, [1] ¶ 22. The amount of sales tax in controversy was potentially $7.4 million. Dkt. 20-cv-983, [1] ¶ 22.

In denying the first motion to remand, I noted that Pappas's individual claim was about the underpayment of fees, not taxes, and including taxes in the amount in controversy calculation seemed overinclusive. But because Pappas referenced sales tax, it was not impossible for other members of the class to seek redress based on the underpayment of sales tax. *See* Dkt. 20-cv-983, [25] at 3 ("There is a reference to a broader theoretical breach in his complaint, one that includes the failure to pay taxes."). So it was not a legal certainty that less than $5 million was at stake. In the amended complaint, Pappas explains that his claim is not about sales tax—he "seeks no redress in this action based on sales tax obligations." [1-1] ¶ 30.

Pappas's amended complaint is not a clarification of the facts that existed at the time of the first removal. Perhaps Pappas regrets how he articulated his claim, but he alleged that sales tax was at issue in the case. He alleged that the insurance company breached the policy when it failed to include "title, registration and license plate fees and taxes" in its payout. Dkt. 20-cv-983, [1-1] ¶ 43. Removing references to sales tax now does not remove them from the case at its inception. Similarly, Pappas

now says he doesn't seek injunctive relief, but he clearly included injunctive relief in the original complaint. Dkt. 20-cv-983, [1-1] ¶ E. So at the time of removal, injunctive relief was in play. Although defendant did not offer a value on the injunction, the scope of the relief made a significant pecuniary loss likely. Finally, although punitive damages were not available on the theories pled in the original complaint, the prospect of amendment to add a punitive damages claim was not legally impossible. Pappas's efforts to recast his complaint to reduce the amount in controversy do not divest this court of jurisdiction over the original complaint. The motion to remand is denied.

*Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018). At this stage of the case, I may consider allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019). Only breach is at issue here.

Under Illinois law, the general rules governing interpretation of contracts also govern the interpretation of insurance policies. *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020). The goal is to "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (quoting *Hobbs v. Hartford Ins. Co.*, 214 Ill.2d 11, 17 (2005)). In addition to the policy language itself, state insurance regulations are automatically incorporated into the insurance policy as a matter of law. *Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 661 (7th Cir. 2020).

Much of Pappas's amended complaint rehashes the allegations in the first complaint. He continues to insist that title and transfer fees are part of the actual cash value of the vehicle because they are mandatory fees that are necessary to replace the car. The plain language of the policy obligates defendant to pay for "loss caused by the collision" to the insured car when operated by the insured driver. [1-1] ¶ 35; [1-1] at 39. The policy defines "loss" as "direct and accidental physical damage

5

to" the car. [1-1] ¶ 37. The policy doesn't otherwise obligate defendant to a minimum amount. The provision that Pappas relies on is titled "Limit of Liability." [1-1] at 41. But a limit of liability provides a ceiling, not a floor. *Sigler*, 967 F.3d at 660. The limit of liability provision "doesn't promise to pay these costs regardless of whether the insured incurs them." *Id.* Rather, it describes "the *most*" that an insurance company will pay in the event of a covered loss. *Id.* So Pappas's treatment of the limit-of-liability provision as an obligation to pay is wrong. Further, as noted in the prior dismissal order, the policy instructs that actual cash value be based on the market value, age, and condition of the car when the loss occurred. The ordinary meaning of those terms do not encompass vehicle replacement fees. And to the extent Pappas relies on the policy's including replacement fees in the limit-of-liability section, the plain language of the policy limits liability to *either* the actual cash value of the insured car at the time of loss, *or* the cost of replacement, whichever is less. "Or" is disjunctive. The two remedies are alternatives to each other, not cumulative sources of recovery.

Pappas's argument that actual cash value must encompass replacement fees because the policy doesn't specifically exclude them from its definition of actual cash value "gets things backward." *Sigler*, 967 F.3d at 660. A policy doesn't need to exclude coverage "for something that it does not cover to begin with." *Id.* And Pappas's reliance on communications he received from defendant after the collision continues to be unavailing. *See* [20] at 9. When considering a breach-of-contract claim, a court need only look to extrinsic evidence when the terms of a contract are ambiguous. *Lexington Ins. Co. v. RLI Ins. Co.*, 949 F.3d 1015, 1020 (7th Cir. 2020). The terms of the insurance policy at issue here are straightforward. And in any event, the emails that Pappas received don't unequivocally guarantee him full reimbursement for sales tax and title fees—they describe how he can obtain reimbursement under state insurance regulations. As discussed further below, the regulations provide instances when an insurance company both may or must reimburse the insured for taxes and fees, and the emails Pappas received simply reiterated those procedures.

There is one potentially meaningful difference in the amended complaint. The Illinois Administrative Code provides that, in the event of a total loss, an insurer may either replace the insured car or pay the insured driver a cash settlement. Ill. Admin. Code tit 50, § 919.80(c)(1), (2); *Sigler*, 967 F.3d at 661. If the insurance company pays a cash settlement, and the insured buys or leases a new car within 30 days of the settlement, the insurance company must reimburse the insured for "the applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the vehicle." Ill. Admin. Code tit 50, § 919.80(c)(3)(A)(i). That provision applies "*only* when the insured purchases or leases a new vehicle within a specified time and substantiates that he has incurred these costs." *Sigler*, 967 F.3d at 661. If the insured doesn't confirm that he paid those taxes and fees within 33 days, "the company shall not be required to reimburse" him. Ill. Admin. Code tit 50, § 919.80(c)(3)(A)(i). In lieu

6

of that reimbursement procedure, the insurance company "may" instead pay taxes and transfer and title fees at the time of settlement. *Id.*

In the original complaint, Pappas alleged that defendant paid him a flat sum of $120 for a title fee, but, when Pappas bought a replacement car, he paid $251 for "mandatory title, registration and license plate fees." Dkt. 20-cv-983, [1-1] ¶ 52. Since the Code mandates reimbursement only for "sales taxes and transfer and title fees," I found that defendant had complied. Defendant had paid Pappas a title fee, and the Code did not require the insurance company to pay for "registration and license plate fees." Dkt. 20-cv-983, [32]. In the amended complaint, Pappas is more precise about how much he paid for which fee: he says he paid $150 for a title fee and $101 for a license fee. [1-1] ¶ 62. So, Pappas says, defendant shortchanged him by $30—defendant only paid him $120 for a title fee, not the $150 that he paid.[2]

The amended complaint specifies that defendant withheld $30 in title fees. But the complaint still falls short because Pappas doesn't allege that he followed the Code's procedures. Pappas alleges that he bought a replacement vehicle, [1-1] ¶¶ 61–62, and that he received a payment from defendant, but doesn't say when he received the settlement. Nor does he allege that he submitted proof to defendant that he paid those fees. Defendant was required to reimburse him "if and only if" he followed the procedures laid out in the regulation. *Sigler*, 967 F.3d at 662. Pappas alleges more than the plaintiff in *Sigler* did, because Pappas actually bought a replacement car and incurred a title fee. But without alleging that he incurred the fee within the deadline and substantiated it to defendant, he cannot state a claim for breach based on the insurance regulation. *Id.* (dismissing breach-of-contract claim where plaintiff did not allege that he incurred or substantiated vehicle-replacement costs before the deadline).

The exhibits attached to the complaint offer some context, but don't establish that Pappas followed the procedures.[3] For example, he submits a document showing that he paid the $150 title fee when he purchased a replacement vehicle on August 6, [1-1] at 74, and he submits an email dated three days later from a claims representative, telling Pappas that his "tax reimbursement" was processed. [1-1] at 71–72. The tax reimbursement was "based on the settlement amount: $8892 X 7.25% + $120 (title fee) = $764.67." [1-1] at 71. These corroborate that he purchased a replacement vehicle, but they don't establish that he did so within 30 days of the

---

[2] As Pappas all but concedes, this theory of breach narrows the relief he's seeking to $30. [20] at 4. He refers to an "alternative construction of transfer and title fees" that "could increase the underpayment amount" to $131, [20] at 4, but doesn't elaborate on how the regulation could be read to require reimbursement for a license fee.

[3] I consider the exhibits because they are documents attached to the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

settlement (it's not clear when he received the settlement payment), nor that he submitted proof of the costs incurred to defendant within 33 days of the settlement.

The regulation provides that an insurer "may" provide the fees at the time of settlement. "May" is permissive, and "permissive statutory or regulatory language, by definition, does not command anyone to do anything." *Sigler*, 967 F.3d at 661. So defendant could not have breached the policy by doing something that was merely optional. Defendant was not *required* to reimburse Pappas for his full title fee "unless [he] timely provide[d] documentation that these costs were actually incurred." *Id.* at 662 n.3.

Pappas's reliance on § 919.80(c)(1)(C) doesn't save his claim. That section provides that if the insured elects the cash settlement over a replacement vehicle, the insurance company need only pay the same amount of taxes and fees it would have otherwise paid on the replacement. But it also provides a "condition precedent to this method of settlement": the insurance company must first offer the replacement vehicle to the insured, and the insured must reject the offer. Ill. Admin. Code tit 50, § 919.80(c)(1)(C). Pappas doesn't allege that defendant offered him a replacement vehicle, so this subsection didn't obligate defendant to pay transfer and title fees either. Neither the language of the policy nor the incorporated regulations required defendant to pay Pappas's taxes and title fees, unless he took specific steps. Since Pappas doesn't allege that he followed those procedures, defendant didn't breach the policy and Pappas can't state a breach-of-contract claim.

Pappas fails to state a claim for unjust enrichment. Unjust enrichment is based on an implied contract. "Where there is a specific contract that governs the relationship of the parties, the doctrine has no application." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017) (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014)). Since an insurance policy governs the relationship between Pappas and defendant, Pappas cannot state a claim for unjust enrichment. *See Toulon*, 877 F.3d at 742 (upholding dismissal of unjust-enrichment claim where there was "no question" that insurance policy governed the parties' relationship and plaintiff attached policy to the complaint). Alternatively, unjust enrichment can be based on other conduct, such as fraud or duress, but unjust enrichment is not an independent cause of action—it rises and falls with the underlying claim. *Toulon*, 877 F.3d at 741; *see also Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 645 (7th Cir. 2019). Pappas doesn't allege that defendant committed some other act, constituting its own cause of action, that could support the unjust-enrichment claim.

All claims are dismissed with prejudice. Pappas has had two opportunities to state a claim and has not done so. He doesn't offer any reason to think he could successfully supplement either claim on the third try. The Seventh Circuit issued *Sigler* before Pappas filed his response brief and defendant filed a notice of supplemental authority, but Pappas doesn't argue that he could amend his complaint

8

to comply with *Sigler*. Further amendment would be futile. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) (leave to amend should be given unless amendment would be futile).

ENTER:

Manish S. Shah
United States District Judge

Date:  January 12, 2021

9